[908 NE2d 898, 880 NYS2d 908]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PAUL BOYD, Respondent.

Argued March 26, 2009; decided May 7, 2009

**POINTS OF COUNSEL**

*Robert M. Morgenthau, District Attorney,* New York City (*David M. Cohn* and *Mark Dwyer* of counsel), for appellant. The Appellate Division erred by vacating defendant's guilty plea. (*People v Louree,* 8 NY3d 541; *People v Cona,* 49 NY2d 26; *People v Catu,* 4 NY3d 242; *People v Lopez,* 71 NY2d 662; *People v Johnson,* 82 NY2d 683; *People v Warren,* 47 NY2d 740; *People v Van Deusen,* 7 NY3d 744; *People v Laws,* 86 NY2d 769; *People v Lawrence,* 85 NY2d 1002; *People v Autry,* 75 NY2d 836.)

*Dominic J. Sichenzia,* Carle Place, for respondent. The Appellate Division's well-reasoned decision correctly determined that respondent's due process rights had been violated, that the violation was clear from the face of the record and was properly raised on direct appeal, and that vacatur is the proper remedy. (*People v Lopez,* 71 NY2d 662; *People v Louree,* 8 NY3d 541; *People v Catu,* 4 NY3d 242; *People v Ford,* 86 NY2d 397; *Walker v Perlman,* 556 F Supp 2d 259; *People v Sparber,* 10 NY3d 457; *North Carolina v Alford,* 400 US 25; *Boykin v Alabama,* 395 US 238; *Caputo v Henderson,* 541 F2d 979; *People v Van Deusen,* 7 NY3d 744.)

**OPINION OF THE COURT**

CIPARICK, J.

On August 20, 2004, defendant pleaded guilty to two counts of robbery in the first degree (Penal Law § 160.15) in full satis-

faction of two separate indictments alleging that he participated in four separate gunpoint robberies of Cosi restaurants in Manhattan. In exchange, defendant would receive concurrent determinate sentences of 12 years on each count. After defendant's plea allocution, the People brought to Supreme Court's attention the fact that the postrelease supervision (PRS) component of defendant's sentences had not been mentioned, and the court replied, "I don't, because it's mandatory." The judge then asked defendant "Do you understand that there is a post-release supervision that's mandatory?" Defendant responded that he did.[1] On September 21, 2004, when defendant appeared for sentencing, Supreme Court failed to pronounce his PRS terms in accordance with Criminal Procedure Law §§ 380.20 and 380.40.

On defendant's appeal, the Appellate Division, with one Justice dissenting, reversed, vacated defendant's plea and sentences and reinstated both indictments (51 AD3d 325 [2008]). The majority concluded that defendant was deprived of a complete understanding of the implications of entering a guilty plea because neither Supreme Court nor the People properly advised him of the PRS components of his sentences. Specifically, the majority determined that defendant could not knowingly, voluntarily and intelligently decide to accept the plea without knowing the duration of the PRS. Applying our recent precedents in *People v Catu* (4 NY3d 242 [2005]), *People v Van Deusen* (7 NY3d 744 [2006]), *People v Louree* (8 NY3d 541 [2007]) and *People v Hill* (9 NY3d 189 [2007]) the Appellate Division held that the appropriate remedy was vacatur of the plea. The dissent asserted that defendant's claim was not preserved for appellate review and declined to review it in the interest of justice. A Justice of the Appellate Division granted leave and we now modify.

In *Catu* we stated:

> "Because a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction" (4 NY3d at 245).

---

1. The PRS term that could be imposed was from $2^1/_2$ to 5 years, within the court's discretion. Defendant was not advised at either his plea allocution or at his sentencing as to the exact duration of the PRS term.

Further, we determined in *People v Louree* that a defendant
need not preserve the objection:

> "[W]here a trial judge does not fulfill the obligation
> to advise a defendant of postrelease supervision dur-
> ing the plea allocution, the defendant may challenge
> the plea as not knowing, voluntary and intelligent
> on direct appeal, notwithstanding the absence of a
> postallocution motion" (8 NY3d at 545-546).

Here, although Supreme Court mentioned that the sentence
would include PRS at the time of the plea, the court failed to
advise defendant of the specific term of PRS—a deficiency that
is apparent from the record of the plea proceeding. Contrary to
a dissenting colleague's view that the comments made by the
trial judge were sufficient to enable defendant to move to
withdraw his plea (*see* Smith, J., dissenting at 396), we find a
postallocution motion was not required to challenge the suffi-
ciency of the plea. This does not complete the analysis of
defendant's claim, however.

In *People v Sparber* (10 NY3d 457 [2008]), we addressed the
proper remedy where the sentencing court failed to pronounce
the PRS component of the sentence. We noted that "the relief
that defendants request[ed]—expungement of their PRS
terms—would permit them to serve a sentence not in compli-
ance with the statute" (*id.* at 471). We concluded that such a
remedy was unavailable, stating: "[t]he sole remedy for a
procedural error such as this is to vacate the sentence and re-
mit for a resentencing hearing so that the trial judge can make
the required pronouncement" (*id.* at 471). Thus, a criminal de-
fendant has a right to hear directly from the court its pronounce-
ment as to what the entire sentence encompasses. In *Matter of
Garner v New York State Dept. of Correctional Servs.* (10 NY3d
358 [2008]), we reaffirmed that "the combined command of
CPL 380.20 and 380.40 is that the sentencing judge—and only
the sentencing judge—is authorized to pronounce the PRS
component of a defendant's sentence" (*id.* at 362).

In response to our decisions in *Sparber* and *Garner*, the
Legislature created a statutory exception to the mandatory
imposition of PRS, which was directly aimed at saving guilty
pleas. On June 30, 2008, after the Appellate Division's ruling in
this case, Penal Law § 70.85 became effective; it states that

> "[t]his section shall apply only to cases in which a
> determinate sentence was imposed between Septem-

ber first, nineteen hundred ninety-eight, and the effective date of this section, and was required by law to include a term of post-release supervision, but the court did not explicitly state such a term when pronouncing sentence. When such a case is again before the court pursuant to section six hundred one-d of the correction law or otherwise, for consideration of whether to resentence, the court may, notwithstanding any other provision of law but only on consent of the district attorney, re-impose the originally imposed determinate sentence of imprisonment without any term of post-release supervision, which then shall be deemed a lawful sentence."

Indeed, the Governor's Approval Memorandum acknowledges that the new statute would "avoid the need for pleas to be vacated when the District Attorney consents to re-sentencing without a term of PRS" (Governor's Approval Mem, Bill Jacket, L 2008, ch 141, at 13-14, reprinted in 2008 McKinney's Session Laws of NY, at 1653).

 The People urge that even if *Catu* and its progeny require vacatur of defendant's plea and sentence, the Legislature has created an alternative remedy authorizing Supreme Court to resentence defendant to his original 12-year determinate sentence without PRS and that Penal Law § 70.85 should be applied here.[2] This corrective action should not be entertained at this time because the constitutionality of this new provision and its applicability to this case have not been sufficiently developed for our review. Although a dissenting colleague believes that Penal Law § 70.85 is unconstitutional as applied to this case (*see* Pigott, J., dissenting at 398), we recognize that the issue of whether the deficiency in the plea allocution can be rectified by granting defendant specific performance of the plea agreement—a determinate sentence without imposing a term of PRS—should be determined by Supreme Court in the first instance. We therefore remit this case to Supreme Court to give the People the opportunity to litigate their argument regarding the applicability of Penal Law § 70.85 and for defendant to assert any constitutional challenges to the operation of the statute.

---

**2.** On this appeal, the People asserted that they would consent to reimposing the originally imposed 12-year determinate sentence of imprisonment without any term of postrelease supervision pursuant to Penal Law § 70.85 thereby ostensibly honoring the original promise (*see People v Selikoff*, 35 NY2d 227, 241 [1974], citing *Santobello v New York*, 404 US 257, 260 [1971]).

Accordingly, the order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

SMITH, J. (dissenting). The majority holds (1) that defendant's plea was bad under *People v Catu* (4 NY3d 242 [2005]) because, at the time of the plea, defendant was informed only of the fact, not the duration, of the period of postrelease supervision included in his sentence and (2) that this error can be the basis for an appeal even though defendant did not move to withdraw his plea at Supreme Court. I have no quarrel with the first part of the majority's holding, but I dissent from the second. (I agree with the majority that, if there is a reviewable error here, remittal for further proceedings is warranted.)

The general rule is that an error may not be raised on appeal unless defendant objected at the time the error was committed. Obviously, this rule in its pure form cannot apply to guilty pleas; a contemporaneous objection to one's own guilty plea is a contradiction in terms. We held, however, in *People v Lopez* (71 NY2d 662, 665 [1988]), that a preservation requirement does apply to most guilty pleas: "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea . . . or a motion to vacate the judgment of conviction." We later made clear that the *Lopez* requirement applies to plea allocutions generally, even where the problem is not one of "factual sufficiency" (*People v Clarke*, 93 NY2d 904 [1999]). Under *Lopez*, preservation can be dispensed with only in "that rare case . . . where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea" (71 NY2d at 666).

In *People v Louree* (8 NY3d 541 [2007]), we held the *Lopez* preservation requirement inapplicable to a plea that was deficient under *Catu*. The *Louree* holding was thought to be justified by practical necessity, as the *Louree* majority explained:

> "We . . . conclude that where a trial judge does not fulfill the obligation to advise a defendant of postrelease supervision during the plea allocution, the defendant may challenge the plea as not knowing, voluntary and intelligent on direct appeal, notwithstanding the absence of a postallocution motion. In so deciding, we cannot shut our eyes to the actual

or practical unavailability of . . . a motion to withdraw the plea . . . If the trial judge does not mention postrelease supervision at the allocution, as happened here, a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge." (8 NY3d at 545-546.)

As Justice McGuire pointed out in his dissent in the Appellate Division, the reasoning of *Louree* does not apply to this case, because the trial judge here did mention postrelease supervision at the allocution. I grant that the information the judge gave—which did not include the number of years of postrelease supervision—was insufficient under *Catu* to make the plea knowing, voluntary and intelligent. But it was enough to enable defendant to make a motion to withdraw his plea. He knew that he would be subject to postrelease supervision, and he knew that the court had not told him the length of it. He could have moved to withdraw his plea on that ground at any time before he was sentenced, and his failure to do so should bar him from raising the *Catu* issue on appeal.

PIGOTT, J. (dissenting). I respectfully dissent. The majority concedes that the trial court's failure to advise defendant of the duration of his postrelease supervision amounts to a *Catu* error (*see People v Catu*, 4 NY3d 242 [2005]), i.e. a violation of defendant's constitutional rights; nevertheless, they decline to remedy it.

We have held that when a court fails to advise a defendant of postrelease supervision at his plea allocution, the defendant is entitled to reversal of his conviction (*see People v Sparber*, 10 NY3d 457, 469 [2008]; *People v Hill*, 9 NY3d 189 [2007]; *People v Catu*, 4 NY3d 242 [2005]), and have repeatedly enforced this principle. For instance, in *People v Van Deusen* (7 NY3d 744 [2006]), we vacated the defendant's plea despite the fact that the defendant's sentence, including postrelease supervision, was actually less than the maximum potential period of incarceration that she agreed to serve.

Similarly, in *People v Hill* (9 NY3d 189 [2007]), we vacated defendant's guilty plea and rejected a trial court's modification of his sentence made in an attempt to satisfy *Catu*. A majority of this Court found that since the defendant's plea could not be deemed knowing, voluntary and intelligent when made, no later events could rescue it. The majority reiterated that a harmless error analysis is inappropriate when evaluating a *Catu* claim. Indeed, the Court explained:

"The dissent incorrectly believes that *Catu* and *Van Deusen* turned on the question whether 'the defendant got the full benefit of her plea bargain' (dissenting op at 194); thus, the dissent attempts to undo the prejudice of defendant's involuntary guilty plea. Rather, *Catu*, *Van Deusen* and *Louree* made clear that the courts violated the defendant's due process rights—not the defendant's sentencing expectations. Therefore, we vacated the defendants' involuntary guilty pleas to remedy the constitutional violations. Here, we are constrained to give the same relief, exposing defendant to the full penalty of at least a 25-year prison term." (*Id*. at 193.)

Thus, our holdings in *Catu* and *Van Deusen* and more recently in *Hill* make clear that a defendant is entitled to vacatur of his plea when the court commits a *Catu* error. Although I dissented in *Hill*, we are bound by this recent precedent.

The People now argue as an alternative to vacating defendant's plea that he be resentenced under Penal Law § 70.85. The majority concludes that this corrective action "should not be entertained at this time" (majority op at 394). For the reasons that follow, I disagree.

Under this new legislative framework, a defendant who pleads guilty to a determinate sentence without any knowledge of postrelease supervision may proceed to have the court resentence him, if the District Attorney consents, to a term of imprisonment without the mandatory postrelease supervision. Specifically, the statute provides:

"This section shall apply only to cases in which a determinate sentence was imposed between September first, nineteen hundred ninety-eight, and the effective date of this section, and was required by law to include a term of post-release supervision, but the court did not explicitly state such a term when pronouncing sentence. When such a case is again before the court pursuant to section six hundred one-d of the correction law or otherwise, for consideration of whether to resentence, the court may, notwithstanding any other provision of law but only on consent of the district attorney, re-impose the originally imposed determinate sentence of imprisonment without any term of post-release supervision, which then shall be deemed a lawful sentence" (Penal Law § 70.85).

As the majority notes, the statute's primary purpose is to remedy the sentencing errors that this Court addressed in *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358 [2008]) and *Sparber* (10 NY3d 457 [2008]). In those cases, we held that only the sentencing court—not the Department of Correctional Services or the court clerk—has the authority to impose a period of postrelease supervision to an offender's determinate sentence, and that the period of postrelease supervision must be imposed by the court at the time of sentencing in the defendant's presence. Those cases did not involve a *Catu* constitutional error, but were challenges concerning the statutory duty of the sentencing court to pronounce the terms of defendant's sentence in open court.

I recognize that section 70.85 was also added in part as a response to our prior *Catu* precedent. As the legislative history explains:

> "When a defendant who pleads guilty has not been informed that the sentence would include a term of PRS, the defendant may later seek for the plea to be vacated. This bill allows the District Attorney to consent to re-sentencing to the previously imposed determinate term without any term of PRS. By allowing defendants in this situation the benefit of their plea bargains, there should be no need for the pleas to be vacated" (Senate Introducer's Mem in Support of 2007 NY Senate Bill S8714, reprinted in 2008 McKinney's Session Laws of NY, at 1820).

Consequently, the statute permits the District Attorney to consent to a resentence to a term without any postrelease supervision in situations where the defendant has moved to vacate his plea on the ground that it was obtained in violation of his constitutional rights under *Catu*. Although the amendment provides a defendant with an opportunity to seek a new, more favorable sentence, when a constitutional error under *Catu* is involved, there must be a new plea. Neither the Court nor the Legislature can require a defendant to accept a plea that was unconstitutionally obtained.

It is therefore clear that, as applied to this case, Penal Law § 70.85 is unconstitutional because it is in direct conflict with our prior precedent. As we recently stated in *Hill*: "In that the constitutional defect lies in the plea itself and not in the resulting sentence, vacatur of the plea is the remedy for a *Catu* error since it returns a defendant to his or her status before the

constitutional infirmity occurred" (9 NY3d at 191). Thus, I see no need for further litigation on the issue since defendant's plea was unconstitutionally obtained and he therefore is entitled to a vacatur thereof.

Judges GRAFFEO, READ and JONES concur with Judge CIPAR-ICK; Judge SMITH dissents in a separate opinion; Judge PIGOTT dissents separately in another opinion; Chief Judge LIPPMAN taking no part.

Order modified, etc.